No. 110,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AUSTIN SANCHEZ, by and through his next friend and natural guardian, AMY SANCHEZ, and AMY SANCHEZ, individually,
*Appellants*,

v.

UNIFIED SCHOOL DISTRICT 469,
*Appellee*,

and

KERRY BRUNGARDT, MICHEL JEFFRIES, CODY SCHMITENDORF, ALAN SCHMITENDORF, BEVERLY SCHMITENDORF, and RICHARD JEFFRIES,
*Defendants*.

SYLLABUS BY THE COURT

1.

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

2.

The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom a summary judgment ruling is sought.

3.

When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact.

1

4.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

5.

The Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. § 6731 (2012) *et seq.*, immunizes teachers from liability when they take reasonable actions to maintain order, discipline, and an appropriate educational environment.

6.

"Teacher" is defined in the Paul D. Coverdell Teacher Protection Act to include a teacher, instructor, principal, administrator, educational employee who works in a school, or individual school board member. 20 U.S.C. § 6733(6) (2012).

7.

The Paul D. Coverdell Teacher Protection Act provides that no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity; the actions of the teacher were carried out in conformity with federal, state, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school; and the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher. 20 U.S.C. § 6736(a)(1), (2), and (4).

8.

The protection provided by the Paul D. Coverdell Teacher Protection Act extends only to individual teachers, administrators, and school board members and does not provide protection from liability to entities like a school board or a school district.

9.

Under the doctrine of respondeat superior, an employer may be held liable to a third person for injuries caused by the negligence of an employee if the employee is acting within the scope of employment.

10.

An employer is generally relieved of liability under a theory of respondeat superior when a legal or factual determination has been made that the employee did not act negligently.

11.

Statutory immunity from liability granted by the legislature to an employee is personal to the employee and, in the absence of a clear legislative statement to the contrary, does not shield the employer from liability under a theory of respondeat superior.

12.

The Kansas Tort Claims Act makes governmental liability the rule and immunity the exception. Under K.S.A. 2013 Supp. 75-6103(a), each governmental entity is liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. Various exceptions to the general rule of liability are set forth in K.S.A. 2013 Supp. 75-

3

6104. The burden is upon the defendant to establish immunity under one or more of the immunity exceptions.

13.

A school district has a duty to reasonably protect elementary and secondary students in its custody during school hours.

14.

The exception to government tort claim liability based on adoptive immunity as outlined in K.S.A. 2013 Supp. 75-6104(i) is discussed and applied to a school district in light of the Paul D. Coverdell Teacher Protection Act.

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed November 14, 2014. Reversed and remanded.

*Paul Hasty, Jr.* and *Kathryn M. O'Shea*, of Hasty & Associates, L.L.C., of Overland Park, for appellants.

*Teresa L. Watson* and *Terelle A. Mock*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, for appellee.

Before STANDRIDGE, P.J., GREEN and ATCHESON, JJ.

STANDRIDGE, J.:  Amy Sanchez, individually and as next friend of her son, Austin Sanchez (Plaintiffs), sued Unified School District No. 469 (USD 469); Kerry Brungardt, the Lansing Middle School principal; and two students and their parents seeking damages allegedly resulting from the students' bullying of Austin. Eventually, the only claim that remained was Plaintiffs' claim of negligent supervision against USD 469 and Brungardt. The district court granted summary judgment in favor of Brungardt pursuant to the immunity provided in the Paul D. Coverdell Teacher Protection Act of 2001 (the

4

Coverdell Act or the Act), 20 U.S.C. §§ 6731-6738 (2012), and in favor of USD 469 based on principles of respondeat superior liability and the adoptive immunity provision of the Kansas Tort Claims Act (KTCA), K.S.A. 2013 Supp. 75-6104(i). Plaintiffs appeal only from the district court's decision to grant summary judgment in favor of USD 469.

FACTS

In the fall of 2011, Austin Sanchez, Cody Schmitendorf, and Michel Jeffries were seventh-grade students at Lansing Middle School, part of USD 469. Kerry Brungardt was the principal of the middle school and had held that position since 1998. Brooks Jenkins was the vice principal of the middle school. The school had a zero-tolerance bullying policy in effect in the fall of 2011. Austin, Cody, and Michel each acknowledged receipt of information about bullying from presentations at the school.

Austin was new to the middle school in 2011 and did not know anyone there when the school year began. Austin claimed that a few weeks after school started, Cody began bullying him by pushing him and making fun of his height and his "'lazy eye.'" On one occasion, Austin saw his sister, her friend, and Cody walking toward him as he was walking away from the building after school. Upon approach, Cody hit Austin with a water bottle, pushed him, put him into a headlock, and twice threw him to the ground. On another occasion, Cody confronted Austin outside the Lansing 4H building during an after-school party for the football team. According to Austin, Cody got mad about something, pulled out a pocket knife, and threatened to stab Austin. Austin told his mother, Amy, about both incidents. Austin also claimed that Cody would tell other students in the commons area before school that he was going to "kick Austin's ass." Cody said this 5 to 10 times, often loud enough for Austin to hear; sometimes Austin heard these threats from other students.

5

On October 25, 2011, Amy notified the police that Cody was physically bullying Austin. An officer met with Cody and his father. The officer warned Cody during this meeting that further verbal or physical abuse of Austin might result in criminal charges.

On October 26, 2011, Amy and her boyfriend went to the school to report Cody's bullying to Brungardt. Amy informed Brungardt that Cody had been bullying Austin since the beginning of the school year and most of the bullying occurred in the commons area before school, with some incidents taking place during football practice. Amy then told Brungardt about the two physical incidents that had occurred between the boys.

Brungardt later met with Austin to discuss the situation. Brungardt then called Cody to his office and spoke to the two boys together. Cody admitted that he bullied Austin but denied making fun of Austin's lazy eye. Brungardt admonished Cody that he was to leave Austin alone and told Austin to inform Brungardt or Jenkins if Cody bothered him again. After sending Austin back to class, Brungardt talked to Cody at length about why he was engaging in the bullying behavior, about the school's expectations for Cody's behavior, and about how Cody should treat other students. After admonishing Cody again to leave Austin alone, Brungardt warned Cody not to retaliate against Austin. Brungardt then called Cody's mother in Cody's presence and informed her that Cody was being suspended for bullying Austin. Cody received 2 days of out-of-school suspension and 1 day of in-school suspension as punishment. When Cody returned to school, he met with a school social worker, who spoke with Cody about how to treat other students and told him that he should stay away from Austin.

Brungardt reported that he later checked with Austin five to six times to make sure the bullying had ceased, and Austin assured him there was no problem. Brungardt and Jenkins informed Austin's team teachers of the situation between Austin and Cody so they could help monitor it.

On November 9, 2011, Amy and her boyfriend returned to the school to inform Brungardt that Cody was still making threats to physically harm Austin, but this time the threats against Austin were made to other students instead of directly to Austin. For example, Cody told another student to "'keep Austin away from me or I will kick his ass.'" After meeting with Amy, Brungardt and Jenkins spoke to some of the students who were alleged to have heard Cody's threatening statements. Those students confirmed the threatening statements were made. Brungardt next spoke with Austin, who also confirmed Cody's threats to physically harm Austin were now being made to other students instead of directly to him. Brungardt asked Austin why he had not reported Cody's behavior and then reiterated that Austin should let Brungardt, Jenkins, or another adult know if any additional threats or bullying occurred.

Brungardt next met with Austin and Cody together. During this meeting, Cody admitted telling his friend Dylan Hawley to "'get [Austin] away from me' or he would 'kick [Austin] across the cafeteria.'" Brungardt informed Cody that his behavior violated the school's zero-tolerance bullying policy, which had been explained in detail to Cody just weeks earlier in conjunction with the school's decision to suspend Cody for bullying Austin. When Brungardt advised Cody's parents of the violation, they agreed to obtain counseling for Cody in order to avoid imposition of yet another out-of-school suspension. Cody ultimately received 4 days of in-school suspension. In addition to this suspension, the school imposed the following restrictions upon Cody for the balance of the semester: (1) he was required to report to the school office upon arrival and remain in the office until school started and (2) he was required to report to and remain in the school suspension classroom during his lunch period.

During lunch period the next day, Michel—who was sitting at another table—made fun of Austin's eye. Austin told Michel to "shut up." Austin did not really know Michel, was not in any classes or school activities with him, and had never spoken to him prior to that day. When Austin and Michel were in the hallway after lunch, Michel said

he was going to beat up Austin after school. Austin responded, "'[W]hatever,'" because he did not believe that Michel would do it, and he was not scared that Michel would hurt him. Austin did not report either conversation with Michel to any adult at school.

After school that day, Austin was outside near the school bus loading area when one of Michel's friends and the friend's brother pushed him; Austin pushed back. In response, Michel hit Austin, fracturing his jaw. Austin went to the nurse's office. After Brungardt arrived at the nurse's office, he called Amy and the Lansing Police Department to report the incident. Austin was transported to the hospital. While there, he provided a written statement to the police. Austin did not know why Michel would want to hit him and said the incident was unexpected. Neither Amy nor Brungardt were aware of any problems between Austin and Michel prior to the November 10 incident, and there were no reports that Michel had ever previously threatened or hit anyone.

After calling Amy and the police, Brungardt called Michel's father to request that Michel return to the school. Michel admitted to Brungardt that he hit Austin. Michel denied, however, that hitting Austin had anything to do with Cody, who was not present when Michel hit Austin. Brungardt later met with Cody to determine if Cody was involved in any way with Michel hitting Austin. Consistent with Michel's statement, Cody denied having anything to do with the incident. Michel was suspended from school for the remainder of the semester and upon his return to school, he was not allowed in the general student population before school or during lunch. Amy removed Austin from the school following the incident and made arrangements for him to complete the semester by working at home with the help of a teacher. Austin enrolled in a new school at the beginning of the second semester.

On April 12, 2012, Amy filed suit individually and on behalf of Austin, bringing various tort claims against USD 469, Brungardt, Cody and his parents, and Michel and his parents. Plaintiffs ultimately dismissed or settled their claims with Cody, Michel, and

8

their parents. Eventually, the only claim that remained was Plaintiffs' claim of negligent supervision against USD 469 and Brungardt, which alleged that USD 469 and Brungardt breached their duty to provide Austin with a safe learning environment by failing to reasonably and promptly respond to notice of the ongoing bullying by Cody and Michel.

After conducting discovery, USD 469 and Brungardt moved for summary judgment alleging they were entitled to judgment as a matter of law based on immunity under the Coverdell Act and adoptive immunity under the KTCA. Plaintiffs later conceded that Brungardt was entitled to immunity under the Coverdell Act. The district court ultimately granted summary judgment in favor of Brungardt based on Plaintiffs' concession and in favor of USD 469 based on principles of respondeat superior liability. Plaintiffs filed a motion for reconsideration. Although denying Plaintiffs' motion, the court noted in its order that, in addition to respondeat superior, its decision to grant summary judgment in favor of USD 469 also was based on the immunity provision set forth in K.S.A. 2013 Supp. 75-6104(i). Plaintiffs appeal from the district court's grant of summary judgment in favor of USD 469.

STANDARD OF REVIEW

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence.

9

*Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 962, 298 P.3d 250 (2013).

Summary judgment should be granted with caution in negligence actions. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Nevertheless, a district court may grant a summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934-35, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *Carr v. Vannoster*, 48 Kan. App. 2d 19, 21, 281 P.3d 1136 (2012). Finally, and to the extent that resolution of this case involves statutory interpretation, the interpretation of a statute is a question of law over which appellate courts have unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

ANALYSIS

On appeal, Plaintiffs argue USD 469 is not entitled to immunity for breach of its duty to properly supervise and protect its students (1) under the Coverdell Act; (2) under the doctrine of respondeat superior; or (3) under the exception to liability set forth in K.S.A. 2013 Supp. 75-6104(i). Plaintiffs also argue the district court's decision to grant summary judgment in favor of USD 469 violates § 18 of the Kansas Constitution Bill of Rights by effectively eliminating the common-law tort of negligent supervision without providing a substitute remedy. We address each of Plaintiffs' arguments in turn.

*Immunity under the Coverdell Act*

Congress enacted the Coverdell Act as part of the No Child Left Behind Act. See 20 U.S.C. §§ 6731-6738. The Coverdell Act immunizes teachers from liability when they take "reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 6732. "Teacher" is defined to include a teacher, instructor, principal, administrator, educational employee who works in a school, or individual school board member. 20 U.S.C. § 6733(6). The Coverdell Act applies to both public and private schools in states that receive funds under Chapter 70 of the education title. See 20 U.S.C. §§ 6733(4), 6734. Relevant here, the protection from liability provisions of the Coverdell Act provide:

> "[N]o teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—
>
>> "(1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;
>>
>> "(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
>>
>> . . . .
>>
>> "(4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher." 20 U.S.C. § 6736(a)(1), (2), and (4).

Plaintiffs claim that, by its very words, the protection provided by the Coverdell Act extends only to *individual* teachers, administrators, and school board members and does not provide protection from liability to entities like a school board or, as in this case, a school district. Conversely, USD 469 argues Congress intended to provide immunity not only to individuals, but to school districts as well. USD 469 presents the following rationale to support its argument:

11

1. The Act applies to states receiving federal funds for education. 20 U.S.C. § 6734;

2. The Act defines "State" to include its political subdivisions. 20 U.S.C. § 6733(5);

3. USD 469 is a political subdivision of the State of Kansas and receives federal funds for education;

4. Therefore, the Coverdell Act applies to USD 469.

But the rationale presented by USD 469 is incompatible with the unequivocal language of the Act. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). An appellate court first must attempt to ascertain legislative intent through an analysis of the language employed, giving ordinary words their ordinary meaning. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). If a statute is plain and unambiguous, an appellate court does not need to speculate further about legislative intent and, likewise, the court need not resort to canons of statutory construction or legislative history. 291 Kan. at 216. In the absence of a court ruling that is otherwise binding, our approach to interpreting federal statutes is the same. *State v. Bruce*, 295 Kan. 1036, 1038, 287 P.3d 919 (2012). The language of the Act here plainly and unambiguously states that it provides immunity from liability to individuals and not to entities. See 20 U.S.C. § 6733(6)(D) (The term "teacher" includes "an individual member of a school board [*as distinct from the board*]." [Emphasis added.]). Given the unequivocal language used by Congress, there is no need to speculate further about legislative intent; the protection provided by the Coverdell Act does not extend to the school district as an entity here.

12

*Immunity under the doctrine of respondeat superior*

Although the Coverdell Act does not extend immunity to entities such as the school district here, the district court held that USD 469 was immune from liability based on the legal principles underlying the doctrine of respondeat superior. Under this doctrine, an employer may be held liable to a third person for injuries caused by the negligence of an employee if the employee is acting within the scope of employment. *Brillhart v. Scheier*, 243 Kan. 591, 593, 599, 758 P.2d 219 (1988). Because the employer's liability is predicated on the employee's negligence under a theory of respondeat superior, however, a substantive finding that the employee was not negligent necessarily precludes recovery against the employer based on the employee's actions. It is this latter principle upon which the district court relied to conclude that Brungardt's immunity from liability necessarily precluded holding USD 469 liable for Brungardt's acts under a theory of respondeat superior. Although this conclusion may appear logical at first glance, a careful review of the district court's analysis casts considerable doubt on the accuracy of its conclusion.

An employer is generally relieved of liability under a theory of respondeat superior when a legal or factual determination has been made that the employee did not act negligently. In this case, however, the district court granted summary judgment without making any legal or factual determination on the issue of whether Brungardt committed a negligent act. We presume the district court did not reach this issue because, even if Brungardt had acted negligently, he was personally protected from liability for doing so based on the immunity provision of the Coverdell Act. But a defense personal to an employee, such as immunity, will not ordinarily extend to bar a claim against the employer for the employee's negligence unless the rationale for the immunity also applies to the employer. See Restatement (Second) of Agency § 217(b)(ii) (1957) ("In an action against a principal based on the conduct of a servant in the course of employment[,] . . . [t]he principal has no defense because of the fact that . . . the agent had an immunity from

civil liability as to the [agent's] act."). Although this specific language was not carried forward to the Restatement (Third) of Agency, the drafters of the updated version make clear that Restatement (Third) of Agency § 7.01 (2005) was intended to incorporate the principle that "[a]n agent's immunity to civil liability does not shield the principal from liability based on respondeat superior for an act by an agent committed in the course of employment." See Restatement (Third) of Agency § 7.01, Reporter's Note (a), p. 123 (noting "[t]his section consolidates treatment of points made by Restatement Second, Agency, in several sections, including § 217"); Restatement (Third) of Agency § 7.01, Reporter's Note (e), p. 138 (citing *Napier v. Town of Windham*, 187 F.3d 177, 191 [1st Cir. 1999]).

Although no Kansas appellate court has cited to Restatement (Second) of Agency § 217 or Restatement (Third) of Agency § 7.01, our Supreme Court implicitly has adopted the underlying legal principles set forth in these sections, albeit in the context of a personal injury case involving workers compensation laws. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348 (1992). Bright was employed by Southwest, an outside company with whom Cargill contracted to perform major repairs at a Cargill plant. Nanny was employed by LaborSource, Inc. (LSI), a temporary employment agency that had assigned Nanny to work at the Cargill plant. While working at the Cargill plant, Bright was severely injured after being struck by a box of chains that Nanny improperly positioned. Among the issues in *Bright* was whether Bright and Nanny, although employed by separate companies, were considered coemployees of Cargill. If so, Nanny would be immune from Bright's claim of negligence under the relevant provision of the Kansas workers compensation law. And if Nanny was immune, LSI argued it should benefit from that immunity since LSI's liability was purely derivative in nature.

The *Bright* court was not persuaded by LSI's argument, concluding that any immunity granted to Nanny by the workers compensation act was personal to Nanny and did not inure to the benefit of his employer. 251 Kan. at 415. In coming to this

14

conclusion, the court began by noting that the Workers Compensation Act granted employers immunity in exchange for their responsibility to provide workers compensation benefits/coverage to their injured employees. Because LSI had no workers compensation liability for Bright's injuries, the court found LSI was not entitled to immunity under the Workers Compensation Act. See 251 Kan. at 413-15.

Although decided under the statutory framework applicable in workers compensation proceedings, the broad legal concept underlying the court's holding in *Bright* is equally compelling here:  The statutory immunity from liability granted by the legislature to an employee is personal to the employee and, therefore, does not shield the employer from liability under a theory of respondeat superior. 251 Kan. at 414 ("General respondeat superior principles seek to place the cost of work-related negligence on those enterprises that have produced the negligence risk. The negligent risk policy would be defeated by extending to an employer the benefit of a technical defense reserved solely for the employee.").

The United States District Court for the District of Kansas faced a similar issue in the case of *Garcia v. Estate of Arribas*, 363 F. Supp. 2d 1309 (D. Kan. 2005). In *Garcia*, Ballard Aviation, doing business as Eagle Med (employer), argued that because its emergency medical workers (employees) were protected from liability for their own negligence under K.S.A. 65-6124, that protection extended up to shield Eagle Med from liability. According to the *Garcia* court:

> "If, as Eagle Med suggests, the court were to conclude that the policy goals underlying [K.S.A. 65-]6124 required that employers also be absolved of liability for the ordinary negligence of their emergency medical personnel employees, that would mean the court must construe the statute to extend immunity to an entirely different class of persons than those expressly contemplated by the statute. Such a conclusion flies in the face of the very reasons for which respondeat superior liability was recognized. 'The theory behind the common-law doctrine of vicarious liability was that the employer

15

should be liable for the employee's negligence to assure that an innocent injured third party would not have to suffer the loss due to the inability of the tortfeasor employee to respond in damages.' *Bair v. Peck*, 248 Kan. 824, 843, 811 P.2d 1176, 1190 (1991). Thus, vicarious liability represents a policy choice that, as between an innocent victim and the otherwise innocent employer of a tortfeasor, the latter should bear the risk that the tortfeasor is incapable of satisfying any judgment arising from his [or her] negligence. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 406, 837 P.2d 348, 363 (1992) ([Citation omitted.]). The employer is better positioned than the victim to mitigate those risks by diligently selecting and training its employees, purchasing liability insurance, and passing on the added costs to its customers." 363 F. Supp. 2d at 1316.

In analyzing the propriety of extending immunity to employers of immune workers under the doctrine of respondeat superior, the *Garcia* court found two components of our Supreme Court's analysis in *Bright* on that issue to be instructive:

"First, *Bright* states that the statutory immunity granted employees under the Workers Compensation Act was personal to the employee, and therefore did not shield the employer from vicarious liability. *Bright*, 251 Kan. at 415, 837 P.2d at 368. Additionally, *Bright* reflects a narrow view of the immunity granted employers under that statute, stating, 'If the tortfeasor is not the plaintiff's employer or co-employee, the statutes by necessary implication reserve for plaintiff his tortious remedy against defendant,' and, '[T]he immunity granted by the workers' compensation act is personal and does not purport to grant derivative immunity to general employers in the position of [LSI].' [Citations omitted.]" 363 F. Supp. 2d at 1318.

The *Garcia* court ultimately held

"that if the Kansas Supreme Court were presented with the question of whether the immunity granted emergency medical workers under K.S.A. 65-6124 inured to the benefit of their employers based on the law of agency, the Kansas court would likely resolve this question under one of two alternative approaches (or perhaps a combination of both). First, the Kansas Supreme Court would likely extend its holding in *Bright* to conclude that the immunity conferred by K.S.A. 65-6124 was personal to the emergency

16

medical workers and did not absolve their employers of liability. In the alternative, the Kansas Supreme Court would likely adopt the majority view, reflected in Restatement (Second) of Agency § 217, that immunities are personal to agents and employees, and may not be used as a defense for the principal or employer." 363 F. Supp. 2d at 1320-21.

Based on the legal analysis in both *Bright* and *Garcia*, we conclude that Brungardt's immunity from liability under the Coverdell Act was personal to him and, therefore, the doctrine of respondeat superior did not immunize USD 469 from liability for any negligent acts allegedly committed by Brungardt.

*Adoptive immunity under the KTCA*

The KTCA makes each governmental entity "liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2013 Supp. 75-6103(a). The KTCA makes governmental liability the rule and immunity the exception. The burden is upon the defendant to establish immunity under one or more of the immunity exceptions. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 233, 262 P.3d 336 (2011).

Various exceptions to the general rule of liability are set forth in K.S.A. 2013 Supp. 75-6104. The exception cited by the district court in support of its decision to grant summary judgment in favor of USD 469 states that "[a] governmental entity . . . shall not be liable for damages resulting from . . . any claim . . . for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages." K.S.A. 2013 Supp. 75-6104(i). Plaintiffs argue the district court erred in relying on this "adoptive immunity" exception to liability because their claim of negligence against USD 469 is based directly on the entity's duty to properly supervise

students and protect Austin from harm, as opposed to claiming USD 469 is liable for Brungardt's negligence under the doctrine of respondeat superior.

Plaintiffs' claim that USD 469 is directly liable for its own acts of negligence is grounded in the legal premise that a school district owes a duty of reasonable supervision and protection to elementary and secondary students. The duty flows from the district to the students and is distinct from comparable duties owed by certain district employees, including teachers. The duty has been recognized in *Dunn v. U.S.D. 367*, 30 Kan. App. 2d 215, 230-31, 40 P.3d 315, *rev. denied* 274 Kan. 1111 (2002), *and Greider v. Shawnee Mission Unified School D. 512*, 710 F. Supp. 296, 299 (D. Kan. 1989) (forecasting that the Kansas Supreme Court would recognize such a duty). The duty derives, in part, from the *in loco parentis* doctrine, recognizing that a school district stands in place of a student's parents during school hours. An entity, such as a school district, which voluntarily assumes custody over individuals has a duty to take reasonable steps to protect those individuals when the custodial circumstances limit an individual's ability to do so. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 270-71, 261 P.3d 943 (2011) (county owes reasonable duty to protect pretrial detainee held in its jail based on that special relationship, citing Restatement [Second] of Torts § 320 [1964]); *Washington v. State*, 17 Kan. App. 2d 518, 523-24, 839 P.2d 555 (1992) (State has duty to take reasonable steps to protect one inmate against attack from another inmate who had made threats also citing Restatement [Second] of Torts § 320); Restatement (Second) of Torts § 320, comment a, b, c (duty owed those in custody of another extends to children at school and includes reasonable protection against bullying by other students).

This duty is grounded in the special relationship between the district and the students. By comparison, a school district employee driving a district vehicle on district business owes a duty to other drivers to operate the vehicle in a nonnegligent manner. But the district itself owes no such duty to the general public, since the district has no special relationship with the general public. The district's liability for the driver's negligence is

18

purely derivative under respondeat superior principles. Conversely, the district has an *independent* duty to reasonably protect its students from harm. When a district employee breaches that duty, the district may be held directly liable for any foreseeable injury to the student. Liability is not simply imputed to the district based on the employee's breach of a duty he or she owed the student. To be sure, teachers and administrators individually owe a comparable duty to students, and a district could be held derivatively liable on a respondeat superior theory for a breach of that duty absent specific statutory immunities for such liability.

The Kansas Legislature has extended immunity granted government employees to government entities in K.S.A. 2013 Supp. 75-6104(i), thereby immunizing those entities when immunized employees breach their own duties of care. Whether USD 469 is entitled to adoptive immunity under this exception in this case requires us to interpret K.S.A. 2013 Supp. 75-6104(i). "Statutory interpretation raises a question of law over which this court has unlimited review. [Citation omitted.]" *State v. Mason*, 294 Kan. 675, 676, 279 P.3d 707 (2012). When a statute is plain and unambiguous, courts must give effect to its express language rather than determine what the law should be. Courts may not speculate as to legislative intent and may not read the statute to add something not readily found in it. If the statute's language is clear, there is no need to resort to statutory construction. But even if the language of a statute is plain and unambiguous, courts still must harmonize or reconcile various provisions of an act together to avoid statutory interpretations that would be unreasonable or render legislation meaningless. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010); *Redd v. Kansas Truck Center*, 291 Kan. 176, 201, 239 P.3d 66 (2010).

In applying this standard of review, we begin our analysis with the language of the statute itself.

- A governmental entity *or* an employee acting within the scope of the employee's employment
- shall not be liable for damages resulting from any claim
- which is limited or barred by any other law *or* which is for injuries or property damage against an officer, employee, or agent where the individual is immune from suit or damages. K.S.A. 2013 Supp. 75-6104(i).

In order to be entitled to immunity from liability under the plain language of this provision, USD 469 must establish that Plaintiffs' claim here, which is made directly against USD 469 and alleges USD 469 breached its own duty to properly supervise students and protect Austin from harm,

- seeks damages resulting from a claim that is limited or barred by the Coverdell Act; or
- seeks damages resulting from a claim against an officer, employee, or agent where the individual is immune from suit or damages.

Under the facts presented here, USD 469 is not entitled to adoptive immunity. First, Plaintiffs do not seek damages resulting from a claim that is limited or barred by the Act because the claim here is against the school district (USD 469) as an entity and not against any individual. Second, Plaintiffs do not seek damages resulting from a claim brought against an individual officer, employee, or agent. Again, Plaintiffs seek damages resulting from their claim against the school district as an entity; thus, individual immunity from suit or damages for claims brought against individual officers, employees, or agents is irrelevant to the analysis. Given the plain language of K.S.A. 2013 Supp. 75-6104(i), we conclude the adoptive immunity exception to liability reflects an intent by the legislature to ensure that, in applying the doctrine of respondeat superior, a governmental entity has available to it the same defenses and limitations on liability that would be available to the private employer in comparable circumstances. Our conclusion that

20

K.S.A. 2013 Supp. 75-6104(i) was intended to ensure uniformity in applying the doctrine of respondeat superior is consistent with that reached by Professor William E. Westerbeke, a respected legal scholar on the issue of tort law in Kansas.

> "Under *respondeat superior* courts impute the fault of the employee to the employer, but also make available to the employer any defenses available to the employee. The 'other law or immunity' provision should be viewed as simply ensuring that a governmental entity has available to it the same defenses and limitations on liability that would be available to the private employer in comparable circumstances. . . .
>
>   . . . .
>
>   ". . . The traditional interpretation of *respondeat superior* should dictate these results even without the benefit of the 'other law or immunity' provision, and thus the provision should be viewed as reflecting legislative caution, not legislative intent to impose any limitations beyond those imposed by the doctrine of *respondeat superior*." Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 Kan. L. Rev. 939, 953-54 (2004).

Given Plaintiffs are claiming USD 469 is directly liable for breaching its duty to properly supervise students and protect Austin from harm, a claim separate and distinct from its claim of indirect liability under the doctrine of respondeat superior, our decision finding K.S.A. 2013 Supp. 75-6104(i) inapplicable under the facts presented in this case is consistent with legislative intent.

For the reasons stated above, we conclude the district court erred in granting summary judgment in favor of USD 469 based on principles of respondeat superior liability and the adoptive immunity provision of the KTCA. As such, we reverse the court's decision and remand for further proceedings. Because we are reversing and remanding this case to the district court for further proceedings, we need not address the

21

Plaintiffs' argument that the district court's ruling violates § 18 of the Kansas Constitution Bill of Rights by eliminating the common-law tort of negligent supervision against a school district without providing any substitute remedy.

      Reversed and remanded.