NOT DESIGNATED FOR PUBLICATION

No. 119,542

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DECKER ELECTRIC, INC.,
*Appellant*,

v.

PRATT REGIONAL MEDICAL CENTER CORPORATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed December 20, 2019. Affirmed.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant.

*Wyatt A. Hoch*, of Foulston Siefkin LLP, of Wichita, and *David R. Green*, of the same firm, of Overland Park, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: This appeal considers the rights of a subcontractor to seek payment for extra work directly from the owner of a construction project based on a theory of unjust enrichment. The project was to remodel and expand the Pratt Regional Medical Center. The medical center is owned by the Pratt Regional Medical Center Corporation (PRMC). PRMC engaged Health Facilities Group LLC (HFG) to serve as the architect. Hutton Construction Company (Hutton) was the general contractor on the project. It subcontracted with Decker Electric, Inc. (Decker) to perform the electrical work.

1

Decker claimed that PRMC requested Decker to perform additional work which was not included in Decker's subcontract with Hutton. When only some but not all of Decker's requests for change orders were paid, Decker sought relief in the form of a judgment for unjust enrichment against PRMC. In due course, PRMC moved for summary judgment on Decker's claim, and the court granted judgment to PRMC. It is that ruling that brings the matter to us for our de novo review.

*Review Standards*

The standards for summary judgment and our review are well known and oft repeated:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

The party opposing summary judgment need not prove its case, but it has "the affirmative duty to come forward with facts to support its claim." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 520, 856 P.2d 1313 (1993). An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed issue of fact, however resolved, could not affect the judgment, it does not

present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014).

*Scope of Our Review*

PRMC claimed before the district court that it was entitled to summary judgment on Decker's claim for three reasons:

(1) The remedy of unjust enrichment is not available to Decker because Decker settled with Hutton for additional compensation. The district court rejected this argument, finding that in the settlement agreement with Hutton, Decker did not waive its claims against PRMC for additional work requested by PRMC.

(2) PRMC was not unjustly enriched because it paid Hutton the guaranteed maximum price under its contract with Hutton. The district court also rejected this argument, finding that the fact that PRMC paid the guaranteed maximum price under the contract does not preclude a claim for unjust enrichment.

(3) Decker was not in privity of contract with PRMC and cannot establish the elements of unjust enrichment because Decker cannot show that PRMC committed fraud or promised to pay Decker directly for the additional work. The district court based its ruling on this claim. The court ruled that Decker was prohibited as a matter of law from recovering on a claim for unjust enrichment because there was no privity of contract between Decker and PRMC, and PRMC did not separately agree to pay Decker directly. Further, the court found that PRMC did not mislead Decker or induce Decker to change its position beyond what was contemplated by the contract.

3

Neither party claims the district court erred in ruling on issues (1) or (2). PRMC has not filed a cross-appeal. The only claim of error is Decker's claim that the district court erred in granting summary judgment based on issue (3). Accordingly, in our de novo review we will concern ourselves only with PRMC's last summary judgment argument.

*Uncontroverted Facts*

Turning to the statements of uncontroverted facts as they relate to issue (3), we note that under Supreme Court Rule 141(e) (2019 Kan. S. Ct. R. 211) we need not consider parts of the record unless they have been cited in the parties' briefs. In line with that provision, we will consider only the facts that are uncontroverted in the parties' briefs before the district court. Claimed uncontroverted facts asserted by one party that are controverted by the other party are relevant only to the extent that they create a genuine issue of material fact requiring a final resolution at trial.

Based on Decker's response to PRMC's initial statement of uncontroverted facts, it is undisputed that Hutton, the general contractor, served as the "Construction Manager at-Risk" for the project. PRMC agreed to pay Hutton based on cost plus a fee with a guaranteed maximum price of $23,743,622, adjusted by any approved change orders. Hutton subcontracted with Decker to perform the electrical work on the project and agreed to pay Decker for its work to the extent that Hutton was paid by PRMC for Decker's work. Hutton and Decker agreed to cooperate in presenting Decker's claims for additional work to PRMC for payment. PRMC contracted with HFG to serve as architect on the project. HFG served as the initial decision-maker on claims for additional work.

Over the course of the project, disputes arose between Hutton and Decker over amounts owed Decker for additional work over and above the $3,199,949 Decker had already been paid. In an effort to resolve the dispute, Hutton, on Decker's behalf,

4

submitted 58 proposed change orders to HFG requesting $332,349 in additional compensation.

Hutton and Decker ultimately settled their dispute by Hutton paying Decker $354,320 in retainage that Hutton was holding on the subcontract. Decker also was to receive whatever funds Hutton received from PRMC for work performed by Decker.

HFG approved some of the proposed change orders for Decker's extra work and denied the rest, resulting in a $121,166 increase in the guaranteed maximum price. PRMC retained $174,425.29 of the total contract price to cover work on punch list items needed to complete the project.

In its response to the motion, Decker set forth 44 additional facts which related to Decker's unjust enrichment claim. All but two were uncontroverted. We summarize the key points as follows:

Many of the problems on the project were caused by drawings—particularly the mechanical drawings—being completed months after the actual work was done. Decker's change order requests involved in this suit were for work not part of the original contract or drawings.

At the beginning of the project PRMC and Hutton each had a contingency fund. Those funds were depleted early in the project, possibly before the foundations had been completed, due to problems with the mechanical design.

HFG was charged with making the initial decision on change orders. In considering change orders, HFG's job was to decide whether to increase the guaranteed maximum price in Hutton's contract with PRMC and what amount Hutton should be paid.

5

HFG knew the contingency funds that were to pay Decker's change order requests were depleted, but it never passed this information on to PRMC.

HFG was PRMC's agent, at least to the extent that, under PRMC's contract with Hutton, HFG had the authority to bind PRMC regarding matters requiring PRMC's approval as set forth in the contract documents.

PRMC was passive and not informed when it came to claims for additional work. All of that was left to HFG. PRMC did not know whether there were funds available in either of the contingency funds to pay for change orders. With respect to Decker's change orders that HFG denied, PRMC did not know how Decker was asked to do the work or whether the work was included in the original plans on which Decker based its bid.

Decker's work, for which change orders were refused, conferred a benefit on PRMC, and PRMC retained the benefit of that work. PRMC's reason for not paying Decker on these requested change orders was, "We agreed to a guaranteed maximum price with Hutton and we have paid that."

In its reply, PRMC attempted to assert three more claimed uncontroverted facts. But Supreme Court Rule 141 does not provide for additional uncontroverted facts in a reply brief, and there is no provision in the rule that would permit Decker to file a surreply which could address these newly claimed facts. But because these new facts are simply quotations from the contract documents, we will consider them as part of the legal argument to the extent they are raised by the parties.

Finally, Decker sought to supplement the record on appeal with deposition testimony from Susan Page, a PRMC executive; an affidavit from Blaine Clark, one of Decker's owners; and documentary evidence in the form of minutes of periodic meetings

6

between PRMC, Hutton, and the various subcontractors. Even if we were to consider them, they would not have any significant effect in our analysis.

*Analysis*

As a threshold matter, Decker claims that PRMC did not comply with Supreme Court Rule 141's requirement that it state "concisely, in separately numbered paragraphs, the uncontroverted contentions of fact on which the movant relies" and that for each fact it set forth the "precise references to pages, lines and/or paragraphs . . . on which the movant relies." Rule 141(a)(1)-(2).

Decker would have PRMC prove the negative and cite in the record where it can be found that Decker has not submitted facts to support a claim of unjust enrichment. In its brief in support of its motion, PRMC cited *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 177, 910 P.2d 839 (1996), and argued: "Decker has not alleged that PRMC misled Decker, induced Decker to change its position, or acted fraudulently toward Decker (nor is PRMC aware of any evidence that would support such an allegation)." This assertion put Decker on notice of PRMC's argument that Decker lacked evidence on essential elements of its claim. This shifted to Decker "'the affirmative duty to come forward with facts to support its claim.'" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015). Decker responded with 44 additional facts which related to Decker's unjust enrichment claim; 42 of those additional facts are uncontroverted. We are satisfied that PRMC complied with Supreme Court Rule 141.

As a general rule, unjust enrichment is predicated on proof of: "'(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as would make it inequitable for the defendant to retain

7

the benefit without payment of its value.'" *Haz-Mat Response*, 259 Kan. at 177. But when the claim is asserted by a subcontractor who is not in privity with an owner of property who has benefited from the subcontractor's work on the owner's property, the circumstances on which liability can be predicated are limited to the following:

> "[A]n essential prerequisite to such liability is the acceptance by the owner (the one sought to be charged) of benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner. In the absence of evidence that the owner misled the subcontractor to his or her detriment, or that the owner in some way induced a change of position in the subcontractor to his or her detriment, or some evidence of fraud by the owner against the subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor." *Haz-Mat Response*, 259 Kan. at 178.

It appears that the parties followed the traditional protocol in construction projects for handling requested change orders for additional work. The owner makes a request for additional work to the general contractor, the party with whom it has a contractual relationship. The general contractor then directs its subcontractor to do the work, and the general contractor requests a change order from the owner, increasing the contract price to accommodate the cost of the extra work. The general contractor then pays its subcontractor for all approved change orders.

Hutton and PRMC were operating under a contract with a guaranteed maximum price. Hutton submitted a multitude of change order requests for extra work performed by Decker. Some of the requests were approved, resulting in PRMC agreeing to increase the guaranteed maximum price so as to allow sufficient funds for Hutton to reimburse Decker for the work. But some of the requested change orders were denied. According to PRMC, this was because "[w]e agreed to a guaranteed maximum price with Hutton and we have paid that." Decker's claim for unjust enrichment is based on change order requests that PRMC denied.

As we read *Haz-Mat Response*, every subcontractor seeking recovery directly from the owner of the project for extra work must show that the work was done under circumstances that reasonably notified the owner that the subcontractor expected the owner to pay directly for the work. Moreover, the subcontractor must show one of the following: (1) the owner misled the subcontractor to his or her detriment, (2) the owner induced the subcontractor to change its position to its detriment, or (3) the owner defrauded the subcontractor. See *Haz-Mat Response*, 259 Kan. at 178.

Under K.S.A. 2018 Supp. 60-209(b), fraud must be pled with particularity. A close reading of Decker's petition discloses no such claim. Nor does Decker claim that PRMC misled or induced it to perform work by promising to pay Decker directly. Had PRMC promised to pay Decker directly for the extra work, there would have been privity of contract between Decker and PRMC and this action would be for PRMC's breach of contract, not a claim of unjust enrichment.

The circumstances Decker relies on to establish its unjust enrichment claim center on the depletion of contingency funds maintained by Hutton and PRMC. According to the uncontroverted facts, PRMC had a guaranteed maximum price contract with Hutton. At the beginning of the project, PRMC and Hutton each had a contingency fund. But those contingency funds were depleted at some unspecified time early in the project, at least before the disputed change order requests were submitted to HFG. Though there was no dispute that Decker did the extra work in a satisfactory fashion, these requested change orders were denied because there were no funds available in the contingency funds and the guaranteed maximum price, which already had been increased by $121,166, had been reached.

Having paid the guaranteed maximum price does not insulate PRMC from a claim of unjust enrichment, as the district court found with regard to PRMC's second claimed

9

justification for summary judgment. But Decker still has to come forward with evidence which establishes the overall circumstances that support its claim that it reasonably expected to be paid by PRMC directly and that PRMC was on notice of this expectation. It is true that in Decker's settlement with Hutton, it did not waive its claims against PRMC. But when Decker undertook the extra work, the settlement with Hutton had not occurred. When Decker settled its dispute with Hutton, Decker was in the process of following the normal change order procedure which had already begun regarding its claims for extra work on the project. Prior to that time—when the extra work was actually being performed—Decker had not conveyed to PRMC any expectation that it was looking to PRMC directly for payment as opposed to looking to its contracting party—Hutton. When Decker settled its dispute with Hutton after the work was done and the change order requests were still pending, Decker acknowledged that it would take whatever PRMC in its discretion may pay.

On appeal, Decker asserts new facts to oppose PRMC's motion. It argues that PRMC attended and participated in numerous project meetings where changes in the scope of Decker's work were discussed and agreed upon. These new facts were first raised at the oral argument before the district court on PRMC's motion. The support for this new argument is found in the deposition testimony of PRMC executive Susan Page and an affidavit from one of Decker's owners, Blaine Clark, made after briefing on PRMC's summary judgment motion was completed. Page recalled meetings held on a regular basis—probably every other week—on the job site. But as discussed earlier, there is no claim that PRMC committed to Decker that it would pay for any extra work, and Page does not state otherwise. Clark states in his affidavit that because the contingency funds had been exhausted, PRMC was the only source for payment and Decker did the extra work expecting PRMC to pay for it. This, of course, ignores the fact that when the contingency funds were depleted PRMC still paid certain claims by increasing the guaranteed maximum price in the contract by $121,166.

10

The problem with these newly asserted facts, even if we were to consider them, is that to create liability under a theory of unjust enrichment, *Haz-Mat Response* requires that the circumstances under which Decker performed the work put PRMC on notice that Decker expected PRMC to pay for the work.

There is nothing to indicate that the circumstances here deviated from the normal protocol in handling requests for extra work on a construction project. The owner requests that the general contractor perform extra work. The general contractor delegates that responsibility to the appropriate subcontractor who does the work. The general contractor, based on information provided by the subcontractor, submits a request for a change order to the owner's representative in order to increase the overall contract price to accommodate the extra work and to allow the general contractor to pay the subcontractor for the work performed. In this process, it is the general contractor's responsibility to pay the subcontractor, not the owner's.

Here, at the time Decker undertook to perform extra work, there is nothing to indicate that Decker—from the outset—expected PRMC to pay directly. Nor is there any evidence to suggest that PRMC was on notice that rather than following the normal protocol for processing payments for work done on the project, Decker expected payment directly from PRMC for the extra work performed.

Decker and Hutton entered into a settlement agreement that precluded action by Decker against Hutton for the extra work performed at Hutton's direction. Thus, Decker looked to PRMC for relief. Decker now claims, through the affidavit of Blaine Clark, that because the contingency funds had been exhausted PRMC was the only source for payment and Decker did the extra work expecting PRMC to pay for it. But this is not evidence that PRMC was on notice that, in spite of the fact that the normal protocol for handling change order requests was followed, Decker was expecting PRMC to deviate from that procedure and pay Decker directly for the work, which is a prerequisite for

11

recovery under *Haz-Mat Recovery*. The fact that Decker's separate settlement agreement precluded it from pursuing Hutton, its contracting party, does not require PRMC to step in and pay Decker directly.

Decker has not come forward with evidence that PRMC misled Decker, induced Decker to change its position beyond the terms of the relevant contract, or committed fraud, as required by *Haz-Mat Response*. The district court did not err in granting PRMC's motion for summary judgment.

Affirmed.